UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AEROCARE MEDICAL TRANSPORT
SYSTEM, INC.,

                        Plaintiff,

v.                                                      5:18-CV-0090
                                                        (GTS/ATB)
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 1249
INSURANCE FUND; and POMCO
ADMINISTRATORS, INC.,

                        Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

K & L GATES LLP                                         GEORGE B. BARBATSULY, ESQ.
   Counsel for Plaintiff                                ROBERT F. PAWLOWSKI, ESQ.
One Newark Center, 10th Floor
Newark, NJ 07052

BLITMAN & KING, LLP                                     BRIAN J. LaCLAIR, ESQ.
   Counsel for Defendant IBEW Local 1249 Fund           DANIEL R. BRICE, ESQ.
443 North Franklin Street, Suite 300
Syracuse, NY 13204-1415

ROBINSON & COLE LLP                                     MICHAEL H. BERNSTEIN, ESQ.
   Counsel for Defendant POMCO                          MATTHEW P. MAZZOLA, ESQ.
666 Third Avenue, 20th Floor
New York, NY 10017


GLENN T. SUDDABY, Chief United States District Judge

### DECISION and ORDER

Currently before the Court, in this employee benefits action pursuant to the Employee

Retirement Income Security Act ("ERISA") filed by Aerocare Medical Transport System, Inc.

("Plaintiff") against the International Brotherhood of Electrical Workers Local 1249 Insurance

Fund ("Fund") and POMCO Administrators, Inc. (collectively, "Defendants") are the following two motions: (1) Defendant POMCO's motion to dismiss Plaintiff's Amended Complaint against it for failure to state a claim, and (2) Defendant Fund's motion for judgment on the pleadings with regard to Plaintiff's claims against it. (Dkt. Nos. 34, 44.) For the reasons set forth below, Defendant Fund's motion is granted, Defendant POMCO's motion denied as moot, and Plaintiff's Amended Complaint is dismissed in its entirety.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

Generally, in its Amended Complaint, Plaintiff asserts two claims. (Dkt. No. 25 [Pl.'s Am. Compl.].) In its First Claim, Plaintiff claims that, as an assignee of Patient X's rights to pursue a claim for benefits with respect to healthcare expenses incurred as a result of services provided to Patient X, it is entitled to recover benefits from Defendant Fund that have not been paid under the terms of the plan administered by Defendants. (*Id.* at ¶¶ 51-54.) More specifically, Plaintiff alleges that (a) the plan does not prohibit Patient X from assigning his right to benefits under the plan, (b) the air ambulance service rendered to Patient X by Plaintiff was medically necessary to save his life, and (c) Defendant Fund breached the terms of the plan in refusing to reimburse Plaintiff for the costs of that care. (*Id.* at ¶¶ 55-64.)

In its Second Claim, Plaintiff claims that both Defendants breached their fiduciary duties of loyalty and due care to Plaintiff (as Patient X's assignee) by failing to act prudently when they denied Plaintiff's claim for benefit reimbursement for the services rendered to Patient X. (*Id.* at 65-80.) More specifically, Plaintiff alleges that Defendants were not permitted to make benefit determinations "for the purpose of saving money at the expense of the Subscriber." (*Id.* at ¶ 72.)

B.    **Parties' Briefing on Defendants' Motions**

  1.    **Defendant POMCO's Motion to Dismiss for Failure to State a Claim**

    a.    **Defendant POMCO's Memorandum of Law**

Generally, in its motion to dismiss, Defendant POMCO asserts two arguments.  (Dkt. No. 34, Attach. 8, at 13-16 [Def. POMCO's Mem. of Law].)  First, Defendant POMCO argues that, when deciding its motion, the Court is permitted to consider the Summary Plan Description and three letters sent from Defendants (one dated January 2017, one dated February 2017, and one dated September 2017) because those documents are incorporated by reference in the Amended Complaint.  (*Id.* at 13.)

Second, Defendant POMCO argues that Plaintiff's claim against Defendant POMCO must be dismissed because, based on Plaintiff's own factual allegations, Defendant POMCO did not act as a fiduciary for the purposes of ERISA.  (*Id.* at 14-16.)  More specifically, Defendant POMCO argues that, pursuant to the terms of the Summary Plan Description, Defendant POMCO does not have final discretionary authority to make benefit claims determinations (and therefore cannot be a fiduciary) because the Summary Plan Description states that the Fund Trustees have "exclusive authority and discretion to determine all questions of eligibility and entitlement under the plan." (*Id.* at 14-15.)  Defendant POMCO also argues that Plaintiff has admitted that it was the Trustees (not Defendant POMCO) that rendered the final determination on Plaintiff's appeal, and that a January 12, 2017, letter from Defendant POMCO purporting to be a final denial of Plaintiff's appeal was later withdrawn because only the Trustees had the authority to issue such a decision.  (*Id.* at 15-16.)

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant POMCO's motion, Plaintiff asserts three arguments. (Dkt. No. 39, at 12-21 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that the Court should decline to consider the September 2017 letter from Defendant POMCO because (a) Plaintiff did not receive this letter until after it filed its action in January of 2018 and therefore could not have incorporated that letter into its original Complaint, and (b) there are doubts as to the authenticity of the letter because it was unsigned, it was sent to the incorrect address, and it was sent many months after the January 2017 determination that it purports to rescind. (*Id.* at 12-14.)

Second, Plaintiff argues that, even if the September 2017 letter is considered, Defendant POMCO's motion must be denied because the determination of whether a party is a fiduciary is a fact-specific issue that is not suitable for decision on a motion to dismiss. (*Id.* at 14-15.) Plaintiff argues that it still needs to conduct discovery on multiple questions related to Defendant POMCO's actions and relationship to Plaintiff that are material to the determination on whether Defendant POMCO is a fiduciary. (*Id.*)

Third, Plaintiff argues that it additionally has sufficiently pled that Defendant POMCO is a fiduciary to survive this motion. (*Id.* at 16-21.)  More specifically, Plaintiff argues that the action of granting or denying a claim is sufficient to plausibly support the existence of a fiduciary duty, and the Plaintiff has pled that Defendant POMCO exercised discretionary authority and control over the disposition of Plaintiff's claim both initially and on appeal. (*Id.* at 17-18.)  Finally, Plaintiff argues that the September 2017 letter from Defendant, even if considered, is not dispositive of this question because it is actions, not contract language and statements, that show what parties are fiduciaries. (*Id.* at 19-21.)

### c.     Defendant POMCO's Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendant POMCO asserts three arguments. (Dkt. No. 46, at 6-14 [Def. POMCO's Reply Mem. of Law].)  First, Defendant POMCO argues that it does not have final discretionary authority under the plan and did not render the final adverse determination on Plaintiff's claim.  (*Id.* at 6-10.)  Defendant POMCO argues that it is this final discretionary authority to issue a final determination that is the key factor for establishing a fiduciary relationship and that, even if Defendant POMCO had authority to approve claims (a point that is not relevant in this case given that Plaintiff's claim was denied, not approved), that fact does not make it a fiduciary because they still did not have the authority to issue the final appeal determination.  (*Id.* at 8-9.)

Second, Defendant POMCO argues that both the law and evidence demonstrate that it is not a fiduciary under ERISA because (a) there is no dispute that the Fund Trustees did in fact render the final appeal determination, (b) Plaintiff was told that the Fund would not accept appeals addressed to POMCO and Plaintiff resubmitted its appeal to the Trustees, (c) and both a decision and reconsideration decision were rendered by the Trustees.  (*Id.* at 12-13.)

Third, Defendant POMCO argues that the Court should consider Defendant POMCO's September 2017 letter because it is consistent with the factual allegations in Plaintiff's Amended Complaint and it has been verified as authentic.  (*Id.* at 13-14.)

### 2.     Defendant Fund's Motion for Judgment on the Pleadings

### a.     Defendant Fund's Memorandum of Law

Generally, in its motion for judgment on the pleadings, Defendant Fund asserts three arguments.  (Dkt. No. 44, Attach. 1, at 8-17 [Def. Fund's Mem. of Law].)  First, Defendant Fund

argues that it is entitled to judgment on the pleadings because, with regard to Plaintiff's claims against it, Plaintiff is not a proper plaintiff under 29 U.S.C. § 1132(a) (ERISA § 502[a]) given that (a) Plaintiff is not a participant, beneficiary, or fiduciary of the plan, and (b) it is not a valid assignee of Patient X's right to sue due to the provision in the Trust Agreement prohibiting assignment. (*Id.* at 9-12.)

Second, Defendant Fund argues that, notwithstanding the above, Defendant Fund is also entitled to judgment on the pleadings on Plaintiff's second claim against it for breach of fiduciary duty because, based on Plaintiff's own factual allegations, that claim is merely duplicative of the first claim for recovery of benefits. (*Id.* at 12-14.)

Third, Defendant Fund argues that, in the alternative, should the Court determine that Plaintiff's Amended Complaint should survive this motion, the case is entitled to deferential review (i.e., subject to the arbitrary and capricious standard) because the plan gives the administrator discretionary authority to determine eligibility for benefits and construe the terms of the plan. (*Id.* at 15-17.) Defendant Fund also argues that this standard of review limits the Court's review to the contents of the administrative record (absent good cause to admit other evidence). (*Id.*)

### b.      Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Fund's motion, Plaintiff asserts two arguments. (Dkt. No. 47, at 13-22 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that it has a valid assignment of Patient X's rights. (*Id.* at 13-19.) More specifically, Plaintiff argues that (a) ERISA allows providers to sue where there has been an assignment of benefits, (b) the Summary Plan Description expressly permits the right to assign benefits and/or does not contain any

section restricting the right of assignment, (c) the Summary Plan Description is controlling in any conflict between the terms of the Summary Plan Description and the Trust Agreement, and (d) even if the anti-assignment provision of the Trust Agreement was effective, Defendant Fund should be estopped from asserting that provision based on its course of dealing with Plaintiff (i.e., allowing it to file appeals and deciding those appeals on the merits). (*Id.* at 14-19.)

Second, Plaintiff argues that the second claim should not be dismissed at this stage in the litigation according to Second Circuit law. (*Id.* at 20-22.)

### c.    Defendant Fund's Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendant Fund asserts three arguments. (Dkt. No. 50, at 6-14 [Def. Fund's Reply Mem. of Law].) First, Defendant Fund argues that (a) there is no conflict between the Trust Agreement and the Summary Plan Description because the Summary Plan Description merely allows the Trustees the discretion to make direct payments to a physician or healthcare provider, but does not provide a beneficiary with a right to make a unilateral assignment, and (b) even if there was a conflict, it is the Trust Agreement (which contains an express anti-assignment provision), not the Summary Plan Description, that controls under current law. (*Id.* at 6-8.)

Second, Defendant Fund argues that it should not be estopped from relying on the anti-assignment provision because Defendant Fund was required to address Plaintiff's claim and appeals pursuant to ERISA and Plaintiff's status as Patient X's authorized representative. (*Id.* at 9-10.) Defendant Fund argues that it would be illogical to find that Defendant Fund must violate ERISA's requirement to deal with authorized representatives in order to preserve its right to assert the anti-assignment clause. (*Id.*)

Third, Defendant Fund argues that Plaintiff cannot maintain its second claim because both the first and second claims are based on the same premise (i.e., that Defendants denied Plaintiff benefits) and allow the same relief if Plaintiff is successful. (*Id.* at 11-14.) Defendant Fund argues that it is not too soon to determine whether these claims are duplicative and that the Second Circuit allows dismissal of a claim of the same type as Plaintiff's second claim where any harm to Plaintiff could be compensated by a money judgment and Plaintiff cannot satisfy the conditions for showing entitlement to injunctive relief. (*Id.* at 13-14.)

## II.     GOVERNING LEGAL STANDARDS

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.")

**III.     ANALYSIS**

      **A.     Whether Plaintiff Has Standing to Pursue Its Claims Against Defendant Fund Pursuant to ERISA**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant Fund's memoranda of law.  (Dkt. Nos. 44, 50.)  To those reasons, the Court adds the following analysis.

      **1.     The Trust Agreement Contains an Unambiguous Anti-Assignment Provision, the Summary Plan Description Does Not Conflict with that Provision, and Plaintiff Has Not Plausibly Alleged that the Assignment Was Valid**.

The Second Circuit allows physicians to bring claims under ERISA § 503(a) based on a valid assignment from a patient in exchange for health care benefits.  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016).  However, where there is an unambiguous anti-assignment provision in the relevant health care plan, any assignment in contravention of that provision is ineffective.  *McCulloch Orthopedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017).

Section Two of Article VII of the 2016 Restated Agreement and Declaration of Trust of the Fund ("Trust Agreement") states as follows:

> <u>Assignment Prohibited.</u> No monies, property, or equity of any nature

---

[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

whatsoever, in the Fund, or policies or benefits or monies payable therefrom, will be subject in any manner by an employee or a person claiming through such employee, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, levy, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

(Dkt. No. 44, Attach. 3, at 37.)

The Court finds that this provision is unambiguous in indicating that it prohibits an employee or beneficiary (such as Patient X) from assigning any benefits payable from the Fund to another party, and that any such attempt to assign those benefits to another party will be null and void. Notwithstanding this unambiguous prohibition on assignment, Plaintiff argues that the assignment was valid because the Trust Agreement is in conflict with the Summary Plan Description, which is the controlling document. (Dkt. No. 47, at 14-16 [Pl.'s Opp'n Mem. of Law].) The Court finds these arguments unpersuasive for two reasons.

First, as Defendant Fund argues, Plaintiff's argument that the Summary Plan Description is controlling in any conflict between the Trust Agreement and Summary Plan Description is contrary to applicable law. In particular, Plaintiff's argument is based entirely on cases that pre-date the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), in which the Supreme Court concluded "that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for the purposes of § 502(a)(1)(B)." *Amara*, 563 U.S. at 438 (emphasis in original). At least one court in this circuit has applied *Amara* as meaning that, where there is a conflict between the plan document and the summary plan description, the terms of the plan control. *See Schussheim v. First Unum Life Ins. Co.*, 09-CV-4858, 2012 WL 3113311, at *3 (E.D.N.Y. July 31, 2012) ("After *Amara*, to the extent that the language of a

'plan summary' conflicts with the actual terms of the plan, the terms of the plan control.").  This

Court agrees that *Amara* appears to require precedence to be given to the Trust Agreement if

there is a conflict between the Trust Agreement and the Summary Plan Description.  Therefore,

if the Court were to find a conflict between the Trust Agreement and the Summary Plan

Description, the Trust Agreement's anti-assignment provision would control.

Second, notwithstanding the above, the Court is not convinced that there is a conflict

between the Trust Agreement and the Summary Plan description in this case.  Various courts in

this circuit, including this Court, have found that provisions allowing a plan administrator, in its

discretion, to pay benefits directly to a physician or medical provider do not conflict with anti-

assignment provisions.  *See Neuroaxis Neurosurgical Assocs., P.C. v. Costco Wholesale Co.*,

919 F. Supp. 2d 345, 355-56 (S.D.N.Y. 2013) ("[T]he fact that Aetna has reserved for itself the

right to make direct payments to healthcare providers does not suggest that the Plan members

also have the right to unilaterally assign rights to healthcare providers."); *Renfrew Ctr. v. Blue*

*Cross and Blue Shield of Central New York, Inc.*, 94-CV-1527, 1997 WL 204309, at *3-4

(N.D.N.Y. Apr. 10, 1997) (Pooler, J.) (finding that "Blue Cross' retention of discretion to make

direct payment is in no way inconsistent with disallowing patient assignment," and that "[i]t is

untenable to read this direct payment provision as undermining the very anti-assignment clause

that makes Blue Cross' direct payment discretion meaningful").  Therefore, to the extent that

Plaintiff argues that the provision in the Summary Plan Description allowing the beneficiary to

seek direct payment by the Fund to their physician or hospital for medical services is inherently

inconsistent with the non-assignment provision, the Court finds that argument unpersuasive.  As

discussed further below, the fact that the direct payment provision uses the word "assignment" in

its terms does not suggest that Patient X was permitted to unilaterally make the choice to assign his rights to Plaintiff without any approval or input from the Fund.

Even if the Court were to credit Plaintiff's interpretation of the provision in the Summary Plan Description, that provision still would not permit the type of assignment effected in this case. Section Two of Article VI of the Summary Plan Description states that, if the beneficiary wishes to have payment made directly to a hospital, physician or surgeon, it "must complete the appropriate assignment at the bottom of the claim form(s)" and include either the Social Security Number or Tax Identification Number of the doctor of hospital on the claim form or billing. (Dkt. No. 44, Attach. 4, at 38.) This form must then be returned to the Fund Office for processing of the claim. (*Id.*) However, Plaintiff does not allege in its detailed Amended Complaint that either it or Patient X completed the assignment section of this form when submitting the claim to the Fund Office. Rather, Plaintiff bases the assignment on the agreement that was entered into between Plaintiff and Patient X "[i]n association with his transportation to Strong Memorial." (Dkt. No. 25, at ¶ 23 [Pl.'s Am. Compl.].) Given that the transportation to Strong Memorial Hospital occurred before Plaintiff submitted the claim form, Plaintiff has not alleged facts plausibly suggesting that the terms of the Summary Plan Description were complied with in relation to the assignment. (Dkt. No. 25, at ¶¶ 22 [alleging that Patient X was transported on November 6, 2016], 25 [alleging that Plaintiff submitted a claim on November 21, 2016].) Therefore, even if there was a conflict and the Summary Plan Description were controlling (neither of which is true under the prevailing law, as discussed above), Plaintiff has not alleged that it even complied with the unambiguous terms of the direct pay provision in the Summary

Plan Description.[2]

For all of the above reasons, the Court finds that the Trust Agreement contains an unambiguous prohibition on assignment, that this provision does not conflict with the direct pay provision in the Summary Plan Description, and that Plaintiff has not plausibly alleged that it has a valid assignment of Patient X's rights under the plan. Because Plaintiff has not plausibly alleged that it has a valid assignment, it does not have standing pursuant to ERISA to pursue the claims asserted in the Amended Complaint against Defendants.

**2.      There Is No Basis for Finding Estoppel or Waiver of the Anti-Assignment Clause**.

Plaintiff next argues that, even if the anti-assignment provision is found to be valid and enforceable, Defendant Fund should be either estopped from relying on that provision or found to have waived its right to enforce that provision based on its "course of dealing" with Plaintiff, i.e., the fact that Defendants accepted Plaintiff's claim and appeals and at all times acted as if Plaintiff was the proper entity to be pursuing that claim. As with Plaintiff's other arguments discussed above, the Court finds these arguments unpersuasive.

In order to establish estoppel in an ERISA action, Plaintiff "must sufficiently allege '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced,'" as well as adduce "'facts to [satisfy an] extraordinary circumstances

---

[2]     The Court also notes that Plaintiff has acknowledged that, even pursuant to its own asserted assignment agreement, the conveyance of rights is only to the "extent permissible under law and *under any applicable insurance policy and/or employee health care benefit plan*." (Dkt. No. 25, at ¶¶ 23, 53 [Pl.'s Am. Compl.] [emphasis added].)  Plaintiff therefore acknowledges that its assignment is effective only if it is consistent with the terms of the applicable plan. Given the unambiguous anti-assignment provision and Plaintiff's failure to allege it complied with the procedure in the Summary Plan Description, discussed previously, Plaintiff has not plausibly alleged that the assignment complied with the terms of the plan.

requirement.'" *Merrick v. UnitedHealth Group Inc.*, 175 F. Supp. 3d 110, 121 (S.D.N.Y. 2016)

(quoting *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 109 [2d Cir. 2008]).  Courts in

this circuit have found extraordinary circumstances to be those such as intentional inducement or

deception and written or oral interpretation of an ambiguous term where circumstances are

beyond the ordinary.  *Merrick*, 175 F. Supp. 3d at 121 (citing cases).  Plaintiff has not alleged

facts plausibly suggesting that it can show all of these requirements.  Most notably, although

Defendants have engaged in a course of dealing with Plaintiff with regard to its claim and

appeals, Plaintiff does not allege any promises made to it by Defendants or extraordinary

circumstances.  Plaintiff therefore has not plausibly suggested that it is entitled to the benefit of

estoppel.

   As to the issue of waiver, "'[w]aiver arises when a party has voluntarily or intentionally

relinquished a known right.'" *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318,

330 (E.D.N.Y. 2017).  However, "[m]ere silence regarding the anti-assignment provisions does

not constitute a waiver of those provisions." *Neurological Surgery, P.C.*, 243 F. Supp. 3d at

330; *see also Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,

448 F.3d 573, 585 (2d Cir. 2006) ("[W]aiver of a contract right must be proved to be

intentional[;] the defense of waiver requires a clear manifestation of an intent by plaintiff to

relinquish her known right and mere silence, oversight or thoughtlessness in failing to object to a

breach of contract will not support finding of waiver.").

   As Defendant Fund notes in its reply memorandum of law, 29 C.F.R. § 2560.503-1(b)(4)

requires that the claims procedure established by a plan must not "preclude an authorized

representative from acting on behalf of such claimant in pursuing a benefit claim or appeal of an

adverse benefit determination." 29 C.F.R. § 2560.503-1(b)(4). Plaintiff acknowledges in its Amended Complaint that the assignment agreement between it and Patient X indicated that Patient X was designating Plaintiff as his authorized representative as to his claim and there is nothing in the plan documents that appears to limit Patient X's ability to appoint an authorized representative for the purposes of the claims procedure. (Dkt. No. 25, at ¶ 23 [Pl.'s Am. Compl.].) Therefore, because Plaintiff was Patient X's authorized representative, Defendants were required by the terms of ERISA to deal with Plaintiff in that capacity related to the claim and appeals, regardless of whether the *assignment of benefits* was valid; such requirement to deal with Plaintiff throughout the claim and appeals does not negate the anti-assignment provision or otherwise entitle Plaintiff to sue for recovery of benefits in federal court pursuant to ERISA. *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthcoice Hmo, Inc.*, 13-CV-6551, 2016 WL 2939164, at *6 (S.D.N.Y. May 19, 2016) (finding that the plaintiff's status as an authorized representative did not confer standing on the ERISA claim where there was a valid anti-assignment clause, and finding that, because the only cause of action was for recovery of benefits, it did not matter that the plaintiff was barred only from assigning benefits rather than causes of action). Because Plaintiff's assertion of a course of dealing as grounds for waiver relies entirely on actions and interactions associated with Plaintiff's denied claim and appeals, Plaintiff has not plausibly alleged that this conduct constituted a waiver of Defendants' right to assert the anti-assignment provision.

For all of the above reasons, Plaintiff has not plausibly alleged that it has standing under ERISA to pursue its First and Second Claims under ERISA against Defendant Fund.[3]

---

[3]    Because the Court finds that Plaintiff does not have standing to pursue its claims, the Court need not reach a decision as to the other issues raised in Defendant Fund's motion for judgment on the pleadings and Plaintiff's responses to those motions; these issues are rendered moot by Plaintiff's lack of standing. 29 U.S.C. § 1132(a)(3).

**B.     Whether Plaintiff's Claim Against Defendant POMCO Should Also Be Dismissed**

After careful consideration, the Court answers this question in affirmative for the following reasons.

The Court notes that, because the standing issue in this case arises from the requirements to assert a cause of action pursuant to ERISA rather than the requirements to assert a cause of action under Article III of the Constitution, a lack of such statutory (or prudential) standing does not imply a lack of subject-matter jurisdiction; rather it implies a failure to state a claim. *See In re Magnesium Corp. of Am.*, 583 B.R. 637, 647 (S.D.N.Y. 2018) (citing *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 [2014]). As in *Lexmark*, this case involves the question of whether Plaintiff has the right to bring a cause of action under a congressionally enacted statute, i.e., ERISA. Unlike *Lexmark*, the question in this case is more easily answered based on the express language of 29 U.S.C. § 1132(a)(3), which limits persons who may bring a civil action to "a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). As already discussed in relation to Defendant Fund's motion, Plaintiff has not plausibly alleged that it is a participant, beneficiary, or fiduciary, in particular because it has not plausibly alleged that it had a valid assignment of Patient X's rights. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (noting that "[t]he Supreme Court has construed § 502 [29 U.S.C. § 1132] narrowly to allow only the stated categories of parties to sue for relief directly under ERISA," and that "[t]he Court has also held that § 502[a][3] [29 U.S.C. § 1132(a)(3)] strictly limits the 'universe of plaintiff who may bring certain civil actions"); *see also Merrick v. UnitedHealth Group Inc.*, 175 F. Supp. 3d 110, 117, 126 (S.D.N.Y. 2016) (noting that, although "it is well-established in this Circuit that the assignees of beneficiaries to an ERISA-governed insurance

plan have standing to sue under ERISA," the assignment must be valid and enforceable to confer

that standing). Because Plaintiff has not plausibly alleged that it meets the standing

requirements of ERISA, it does not have statutory standing to assert the claim against Defendant

POMCO any more than it has statutory standing to assert the claims against Defendant Fund.

The Court recognizes that the Second Circuit has stated that there is an obligation to

allow a party an opportunity to be heard before the dismissal of its case for failure to state a

claim. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82-83 (2d Cir. 2018). However,

even though there was no express discussion of "standing" in Defendant POMCO's motion,

there was, in parts of the motion, an implied discussion. (*See, e.g.*, Dkt. No. 34, Attach. 8, at 5

[attaching page "1" of Def. POMCO's Mem. of Law, arguing that "Plaintiff . . . does not have

any independent contractual relationship with POMCO or the Co-Defendent Fund"].)

Additionally, Plaintiff did not lack a fair opportunity to provide arguments related to standing.

Indeed, Plaintiff made these arguments in its response to Defendant Fund's motion for judgment

on the pleadings. Given that the relevant question with regard to both Defendants is whether

Plaintiff has standing to sue pursuant to the requirements of ERISA, the arguments made in its

response to Defendant Fund's motion would be the same arguments that would necessarily be

raised when asserting standing to pursue the claim against Defendant POMCO; both the First

and Second Claims are subject to the same standing requirements because they both arise under

ERISA. *See* 29 U.S.C. § 1132(a)(3) (indicating that a civil action can be brought under the

relevant portion of that statute only "by a participant, beneficiary, or fiduciary"). Again, because

the Court has already determined that Plaintiff does not meet the standing requirements of

ERISA, it is "unmistakably clear" that Plaintiff also lacks statutory standing as to the Second

Claim against Defendant POMCO. *Catzin*, 899 F.3d at 82-83. The Court would add only that, even if it were to address the arguments asserted by Defendant POMCO in its memoranda of law, it would accept those arguments for the reasons stated by Defendant POMCO.

For the above reasons, the Court finds that the Second Claim against Defendant POMCO must also be dismissed due to lack of standing, and Defendant POMCO's motion to dismiss is therefore moot.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Fund's motion for judgment on the pleadings (Dkt. No. 44) is **GRANTED**; and it is further

**ORDERED** that Defendant POMCO's motion to dismiss (Dkt. No. 34) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 25) is **DISMISSED** in its entirety.

Dated: December 18, 2018
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge